IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

GEORGETTE CHMURA,

      Plaintiff,

v.                            CIVIL ACTION NO. 1:17CV222
                                   (Judge Keeley)

MONONGALIA HEALTH SYSTEM,

      Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25] AND DISMISSING CASE WITH PREJUDICE

The plaintiff, registered nurse Georgette Chmura ("Chmura"), was terminated from her employment at Monongalia General Hospital ("Mon General"), a subsidiary of the defendant, Monongalia Health System ("Mon Health"), after failing to obtain a mandatory influenza vaccination. Chmura alleges that by terminating her employment Mon Health discriminated against her on the basis of her alleged disability, a latex allergy, in violation of the Americans with Disabilities Act (ADA). Pending before the Court is Mon Health's motion for summary judgment. For the reasons that follow, the Court **GRANTS** Mon Health's motion (Dkt. No. 25), and **DISMISSES** the case **WITH PREJUDICE**.[1]

---

[1] Because, as a matter of law, Chmura's sole claim fails as a matter of law under the ADA, the Court need not reach the issue of whether Mon General and Mon Health are integrated employers. Accordingly, the Court will refer to each entity as reflected by the record before it.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25] AND DISMISSING CASE WITH PREJUDICE**

## I. BACKGROUND

### A.   Chmura's Employment History and Mon General's Influenza Vaccination Program

Beginning in January 2007 Chmura was employed by Mon General as a per diem registered nurse (Dkt. No. 26-1 at 6-7). Chmura maintained that job title throughout the duration of her employment with Mon General, working approximately two to three days per week. Id. at 7, 9.

Sometime in 2015, Mon General implemented a mandatory Influenza Vaccination Program. See Dkt. No. 26-2 ("Flu Vaccination Policy"); see also Dkt. No. 26-1 at 11. The stated purpose of the Flu Vaccination Policy was "to provide information to [Mon Health] Healthcare Workers (HCW) regarding the requirements for all employees, medical staff, allied health staff, residents, contract employees, and volunteers providing services on any [Mon Health] premises to be immunized against influenza" (Dkt. No. 26-2 at 1). Chmura testified during her deposition that the Policy was designed to "reduce [the] risk" of influenza to patients and staff members (Dkt. No. 26-1 at 11-12).

According to the Flu Vaccination Policy, any healthcare worker having a medical contraindication that prevented him or her from obtaining the influenza vaccination "must submit a Medical

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25] AND DISMISSING CASE WITH PREJUDICE**

Exemption Form in its entirety to [the] Employee Health [Department]" (Dkt. No. 26-2 at 1). The Medical Exemption Form "require[d] complete documentation" from the healthcare worker's physician, and an exemption request was subject to approval by the Chair of the Infection Prevention Committee and the Vice President/Medical Director. Id. A healthcare worker receiving an approved medical exemption "[was] required to wear a mask at all times while at work per annually established vaccination deadlines." Id. Further, healthcare workers "[failing] to receive the influenza vaccination or obtain an approved exemption by the date determined annually, [were] considered as not meeting the conditions of employment and . . . considered to have resigned their employment." Id. at 2.

During her employment with Mon General, Chmura had reviewed the Flu Vaccination Policy and understood that it applied to her (Dkt. No. 26-1 at 10, 17).

**B.   Chmura's 2015 Vaccination Exemption Request**

In October 2015, Chmura submitted a Medical Exemption Form completed by her primary care physician, Dr. Janice Allen ("Dr. Allen") (Dkt. No. 26-3 at 2). The 2015 Medical Exemption Form provided three boxes that could be checked by a healthcare worker's physician, each of which referenced certain recognized

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25] AND DISMISSING CASE WITH PREJUDICE**

contraindications to the influenza vaccination. The Form directed the physician to certify that the healthcare worker "**should not be immunized for influenza for the following reasons (Please check all that apply):**

❑    History of previous allergic reaction and documented allergy testing to indicate an immediate hypersensitivity reaction to the influenza vaccine or a component of the vaccine. **Please attach supporting DOCUMENTATION or MEDICAL RECORDS.**

❑    History of Guillain-Barre Syndrome within six weeks of receiving a previous vaccine. Please provide and attach a detailed narrative that describes the event.

❑    Other – Please provide this information in a separate narrative that describe the exception in detail (these requests will be reviewed on a case-by-case basis)."

Id. at 2 (emphasis in original). On Chmura's 2015 Medical Exemption Form, Dr. Allen checked the box next to "Other," and noted "severe Latex allergy. Patient concerned Latex in vial or needle." Id.

Chmura testified in her deposition that, along with her completed Medical Exemption Form, she provided Mon General with a September 12, 2014 letter from Lisa Donahue, Patient Safety Officer at University of Pittsburgh Medical Center Shadyside ("Donahue") (Dkt. No. 26-1 at 18-19).[2] In Donahue's words, "the purpose of this

---

[2] Although the September 12, 2014 letter is signed by Donahue and displays her letterhead, the parties sometime refer to the letter as being written by Dr. Hrebinko, Chmura's treating surgeon at UPMC. Donahue's letter indicates that a courtesy copy was

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25] AND DISMISSING CASE WITH PREJUDICE**

letter [wa]s to confirm that during . . . [a hospital] stay beginning September 4, 2014, [Chmura] experienced low blood pressure requiring medication during surgery from the use of latex gloves" (Dkt. No. 26-4). The only supporting documentation Chmura provided with her 2015 exemption request was Donahue's letter recounting her reaction to latex (Dkt. No. 26-1 at 22).

In an email dated November 9, 2015, S. Nicole Linger, Employee Health & Wellness Manager for Mon General ("Linger"), informed Chmura that her "request for a medical exemption to the vaccine ha[d] been **denied**" (Dkt. No. 26-5) (emphasis in original). Linger's email also advised Chmura that, "[i]f you fail to receive the influenza vaccination by [November 13, 2015], you have failed to meet [Mon Health] conditions of employment and your actions will be considered a resignation of employment" (Dkt. No. 26-5).

The following day, November 10, 2015, Linger sent an email to Dr. Dino Delaportas ("Dr. Delaportas"), stating that Chmura "was just in my office and would like to talk to you about her flu exemption . . . She has a Latex allergy." See Dkt. No. 26-6. On the same date, Linger or another employee indicated in a handwritten note that she had "called [Chmura] and told her that Delaportas states he's not changing his mind on latex." Id. Chmura's

_____

provided to Dr. Hrebinko. See Dkt. No. 26-4.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 25] AND DISMISSING CASE WITH PREJUDICE**

deposition testimony confirms that she never spoke to Dr.
Delaportas following the denial of her 2015 exemption request but
understood her request had been denied due to the availability of
latex-free influenza vaccines (Dkt. No. 26-1 at 22).

Three days after the denial of her exemption request, on
November 12, 2015, Chmura received an intramuscular injection of
Afluria®, a latex-free influenza vaccine ("Afluria"), at a Rite Aid
pharmacy (Dkt. No. 26-7). Approximately two months after receiving
Afluria, on January 19, 2016, Chmura completed a Vaccine Adverse
Event Reporting System (VAERS) form, in which she reported that the
vaccine had caused itching on her arm and wrist and redness on her
hands and neck (Dkt. No. 26-8).

C.  **Chmura's 2016 Vaccination Exemption Request**

The following year, in October 2016, Chmura met with Lisa
Pifer, an Employee Health Nurse at Mon Health ("Pifer"), to discuss
her 2016 influenza vaccination status. See Dkt. No. 26-9. During
that meeting, Chmura provided Pifer with copies of her completed
VAERS form and an observation note from George Anderson
("Anderson"), the Rite Aid pharmacist who had administered the
Afluria vaccine to her (Dkt. No. 26-7). Anderson's note stated, in
full, "Patient showed severe anxiety & nervousness due to latex
allergy. Observed pt for over a half hour & showed anxiousness &

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25] AND DISMISSING CASE WITH PREJUDICE**

itching. I did not observe any rash or breathing issues, but patient was itching midsection & various other parts of the body." Id. Chmura testified in her deposition that Anderson's report accurately described her 2015 reaction to the Afluria vaccine (Dkt. No. 26-1 at 24).

In an October 12, 2016 email memorializing her conversation with Chmura, Pifer reported that she had advised Chmura to "have her doctor fill out a medical exemption form with as much supporting documentation as possible." Id. In the same email, Pifer wrote that Chmura "said she would not take the flu shot this year." (Dkt. No. 26-9).

A few weeks following her conversation with Pifer, Chmura submitted a Medical Exemption Form completed by her new primary care physician, Dr. Maria Gauna ("Dr. Gauna") (Dkt. No. 26-11). Like the 2015 version of the Medical Exemption Form, the 2016 Form provided three boxes that could be checked by Chmura's physician:

> **The above person should not be immunized for influenza for the following reasons (Please check all that apply):**
>
> ❏   History of previous allergic reaction and documented allergy testing to indicate an immediate hypersensitivity reaction to the influenza vaccine or a component of the vaccine.
>
> ❏   History of Guillain-Barre Syndrome within six weeks of receiving a previous vaccine.

❑     Other – (these requests will be reviewed on a case-by-case basis)."

**Please attach supporting DOCUMENTATION or MEDICAL RECORDS for your request.**

Id. (emphasis in original).

On Chmura's 2016 Medical Exemption Form, Dr. Gauna checked the boxes next to "History of previous allergic reaction and documented allergy testing" and "Other." Beside the box marked "Other," Dr. Guana wrote that she had "advised [Chmura] to wear a mask all the time during flu season." Id. Although Dr. Gauna checked the box indicating a "History of previous allergic reaction and documented allergy testing to indicate an immediate hypersensitivity reaction to the influenza vaccine or a component of the vaccine," Dr. Gauna did not attach any supporting documentation regarding a previous allergic reaction or documented allergy testing. See id.

On November 8, 2016, Chmura was informed via email and letter from Kristan Rogers, Director of Corporate Education and Employee Health & Wellness ("Rogers"), that her "request for a medical exemption to the vaccine ha[d] been **denied**" (Dkt. No. 26-12 at 2) (emphasis in original); see also Dkt. No. 26-11 (indicating that Chmura's medical exemption request had been denied on 11/7/16). Rogers' letter further stated, "if you fail to receive the

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25] AND DISMISSING CASE WITH PREJUDICE**

influenza vaccination by [November 18, 2016], you have failed to meet [Mon Health] conditions of employment and your actions will be considered a resignation of employment" (Dkt. No. 26-12 at 2).

Following the denial of her 2016 exemption request, Chmura submitted a one-paragraph letter from Dr. Gauna, dated November 15, 2016, which stated, in relevant part, that "[i]t is medically necessary that Mrs. Chmura dose [sic] not get the influenza vaccine due to hypersensitivity to a component in the influenza vaccine. If you have any questions please feel free to contact my office." (Dkt. No. 26-14). See also Dkt. No. 26-1 at 30. Dr. Gauna did not indicate the component of the influenza vaccine to which Chmura was hypersensitive, nor did she provide any documented allergy testing or other medical records supporting her conclusion. Id. In her deposition, Chmura confirmed that Dr. Guana did not perform allergy testing or any other type of medical testing to determine whether she is hypersensitive to any component of the influenza vaccine (Dkt. No. 26-1 at 26, 31, 34).

Following receipt of Dr. Guana's letter, Dr. Brian Hawthorne, then the Vice President and Medical Director of Mon General ("Dr. Hawthorne"), contacted Dr. Guana to discuss her opinion (Dkt. No. 26-15 at 1-2). According to Dr. Hawthorne, Dr. Gauna confirmed that Chmura had reported a latex allergy to her, but that she never

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25] AND DISMISSING CASE WITH PREJUDICE**

performed any allergy testing to identify the root of the alleged allergy. Id. at 2. Significantly, Dr. Gauna further advised Dr. Hawthorne that, in her opinion, there was no medical reason why Chmura could not receive a latex-free vaccination. Id. Chmura testified in her deposition that she "wouldn't have any reason to doubt" that Dr. Guana so advised Dr. Hawthorne (Dkt. No. 26-1 at 36-37). She further testified that, she "didn't have any medical evidence" from Dr. Guana that she "had a hypersensitivity to any other component of the vaccine other than latex." Id. at 31.

Following Dr. Hawthorne's conversation with Dr. Gauna, Mon General denied Chmura's renewed 2016 exemption request "due to the availability of numerous latex-free influenza vaccination options" (Dkt. No. 26-15 at 2). Rogers notified Chmura of the denial via email and in a letter dated November 18, 2016 (Dkt. No. 26-16) (informing Chmura that her renewed "request for a medical exemption to the vaccine ha[d] been **denied**")(emphasis in original). As had the first denial letter, the second letter stated, "if you fail to receive the influenza vaccination by [November 18, 2016], you have failed to meet [Mon Health] conditions of employment and your actions will be considered a resignation of employment." Id.

On the same date, Chmura's direct supervisor, Susan Konya, Director of Clinical Resources ("Konya"), notified Chmura via

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25] AND DISMISSING CASE WITH PREJUDICE**

letter that, effective immediately, her employment was suspended due to her "failure to comply with the [Flu Vaccine] Policy by either receiving a flu vaccine or obtaining an exemption" (Dkt. No. 26-17). Konya's letter warned Chmura that if she "still ha[d] not complied with the Policy by November 23, 2016, at 5pm [she] would be considered to have resigned [her] employment." Id. Thereafter, on November 23, 2016, Konya notified Chmura that as Mon General had not received proof that she had received an influenza vaccine, it considered her continued non-compliance with the Flu Vaccination Policy to constitute a voluntary resignation of her employment, effective immediately (Dkt. No. 26-18).

On December 21, 2017, Chmura filed suit against Mon Health (Dkt. No. 1), alleging a single claim of discrimination under the ADA. Following the close of discovery in the case, Mon Health filed a motion for summary judgment (Dkt. No. 25), which is now fully briefed and ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on

a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. <u>Providence Square Assocs., L.L.C. v. G.D.F., Inc.</u>, 211 F.3d 846, 850 (4th Cir. 2000). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." <u>Jacobs v. N.C. Admin. Office of the Courts</u>, 780 F.3d 562, 568 (4th Cir. 2015) (citation omitted). The Court must therefore avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. <u>Id.</u> at 248–52.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 25] AND DISMISSING CASE WITH PREJUDICE**

## III. DISCUSSION

### A.   Applicable Law

Under Title I of the ADA, covered entities, including private employers, are prohibited from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a); see also Summers v. Altarum Inst., Corp., 740 F.3d 325, 328 (4th Cir. 2014) ("The ADA makes it unlawful for covered employers to 'discriminate against a qualified individual on the basis of disability.'").

Disability discrimination may be proven through ordinary principles of proof or through the burden-shifting framework established in McDonnell Douglas v. Green, 411 U.S. 792 (1973). Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 572 (4th Cir. 2015) (citation omitted). To satisfy ordinary principles of proof, the plaintiff must provide direct evidence of a purpose to discriminate or circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact. Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988).

Here, the record reveals little, if any, direct or indirect evidence of discriminatory motive, and the parties have confined their arguments on summary judgment to whether Chmura has met her

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25] AND DISMISSING CASE WITH PREJUDICE**

burden under the burden-shifting scheme established by McDonnell Douglas. Under the familiar McDonnell Douglas framework, the plaintiff must first establish a prima facie case of disability discrimination. In this case, Chmura alleges discriminatory treatment in the form of wrongful discharge.[3]

In order to set forth a prima facie case of wrongful discharge under the ADA, a plaintiff must establish, by a preponderance of the evidence, that: "(1) [s]he was a qualified individual with a disability; (2) [s]he was discharged; (3) [s]he was fulfilling h[er] employer's legitimate expectations at the time of discharge; and (4) the circumstances of h[er] discharge raise a reasonable inference of unlawful discrimination." Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 150 (4th Cir. 2012) (citing Rohan v. Networks Presentations LLC, 375 F.3d 266, 273 n. 9 (4th Cir. 2004) (internal quotation marks omitted)).

If the plaintiff satisfies her initial burden of establishing a prima facie case of disability discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to show that its decision to terminate the

---

[3]

 Chmura has not alleged a separate cause of action for failure to accommodate under the ADA, which is a distinct cause of action with different prima facie elements.

14

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25] AND DISMISSING CASE WITH PREJUDICE**

plaintiff was based on a legitimate, non-discriminatory reason. Hoyle v. Freightliner, LLC, 650 F.3d 321, 336 (4th Cir. 2011); see Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). If the employer carries this burden of production, the burden then shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that the legitimate reason offered by her employer is a pretext for disability discrimination. Id.

**B.   Chmura's Prima Facie Case**

Under the McDonnell Douglas framework, the first step in the Court's analysis is to determine whether Chmura has put forth sufficient prima facie evidence of disability discrimination to survive summary judgment. Specifically at issue are the third and fourth prongs of Chmura's prima facie case.[4] Mon Health first argues that Chmura has failed to establish that she was fulfilling Mon General's legitimate expectations at the time of her discharge because of her failure to receive the influenza vaccination or to obtain an approved exemption to the Flu Vaccination Policy (Dkt. No. 26 at 16-18). It further argues that Chmura has failed to

---

[4] Because the parties did not address the issue on summary judgment, the Court assumes, without deciding, that Chmura can establish the first element of her prima facie case, that she is a qualified individual with a disability under the ADA. With regard to the second element, the parties do not dispute that Chmura was discharged from her employment.

15

present any evidence of a reasonable inference of unlawful discrimination. Id. at 18-20.

While Mon Health contends that Chmura's non-compliance with the Flu Vaccination Policy requires a finding that she was not meeting her employer's legitimate expectations, such a finding cannot be made without first considering whether Mon General's enforcement of the Policy was discriminatory under the circumstances. In other words, whether Chmura was meeting Mon General's legitimate expectations at the time of her discharge is inextricably linked to the question of whether the circumstances of her discharge, pursuant to the Policy, raise a reasonable inference of discrimination. Accordingly, the Court will first consider the fourth element of Chmura's prima facie case, whether she has presented sufficient evidence of a reasonable inference of unlawful discrimination.

"An inference is defined as a conclusion reached by considering other facts and deducing a logical consequence from them, and the process of thought by which one moves from evidence to proof." Crawley v. Combs, No. 7:16-CV-00172, 2017 WL 780845, at *2 (W.D. Va. Feb. 28, 2017), aff'd, 693 F. App'x 250 (4th Cir. 2017) (citations and internal quotation marks and alterations omitted). "A reasonable inference is one that is within the range

of reasonable probability." Brown v. Rose's Stores, Inc., 145 F.3d 1323 (4th Cir. 1998) (per curiam); see also Exergen Corp. v. Wal-Mart Stores. Inc., 575 F.3d 1312, 1329 n.5 (Fed. Cir. 2009) ("A reasonable inference is one that is plausible and that flows logically from the facts alleged....").

At the prima facie stage, the Court must carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture. See Brown, 145 F.3d at 1323. Here, Chmura has failed to establish that the circumstances surrounding her discharge give rise to a reasonable inference of unlawful discrimination.

The parties do not dispute that, in November 2016, Chmura failed to comply with Mon General's Flu Vaccination Policy by either receiving an influenza vaccination or obtaining an exemption to the vaccination requirement. It is also undisputed that Chmura requested medical exemptions to the Policy in 2015 and 2016, both of which were denied. See Dkt. Nos. 26 at 7-11; 27 at 3-4; see also Dkt. Nos. 26-5; 26-12; 26-16.

Further, the record reflects, and Chmura does not directly dispute, that her 2015 medical exemption request was based solely on her latex allergy. In support of her 2015 exemption request, Chmura submitted only the Medical Exemption Form completed by Dr.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25] AND DISMISSING CASE WITH PREJUDICE**

Allen and the patient safety letter signed by Donahue, see Dkt. No. 26-1 at 22, both of which indicate, at most, that Chmura has a "severe latex allergy," that she was "concerned [about] latex" in flu vaccines, and that she had "experienced low blood pressure . . . from the use of latex gloves" during a 2014 surgical procedure (Dkt. Nos. 26-3 at 2; 26-4). Consistent with the documents provided to Mon General in support of her request for an exemption, Chmura's 2015 Medical Exemption Form reflects that her request was "denied" because she "can take [a] Latex free" influenza vaccine (Dkt. No. 26-3 at 1). Moreover, Chmura agreed in her deposition that the "basis" of her 2015 medical exemption request "was a latex allergy." (Dkt. No. 26-1 at 22).

Chmura is decidedly less specific, however, about the asserted basis or bases for her 2016 medical exemption request (Dkt. No. 26-3 at 2). As noted earlier, Dr. Guana completed Chmura's 2016 Medical Exemption Form (Dkt. No. 26-11). Dr. Guana's records indicate that, on October 26, 2016, Chmura had an appointment as a "new patient . . . asking for a script for work to state unable to get flu shot due to latex allergy . . . and severe reaction to latex-free flu shot last time in 2015" (Dkt. No. 26-10 at 3). During the appointment, Dr. Gauna completed Chmura's 2016 Medical Exemption Form, in which she indicated that Chmura had a "History

of previous allergic reaction <u>and</u> documented allergy testing to indicate an immediate hypersensitivity reaction to the influenza vaccine or a component of the vaccine" (Dkt. No. 26-11) (emphasis added). Despite the Form's directive to "attach supporting documentation or medical records," Dr. Gauna provided no documentation supporting Chmura's purported history of a previous reaction to the influenza vaccine. Nor did she provide any documented allergy testing indicating that Chmura had experienced an immediate hypersensitivity reaction to the vaccine or one of its components. <u>See</u> <u>id.</u> After concluding that Chmura failed to provide medical records sufficient to demonstrate a documented contraindication to a component of the influenza vaccine other than latex, Mon General denied Chmura's 2016 exemption request (Dkt. Nos. 26-11; 26-12).

Dr. Guana's subsequent November 2016 letter, in which she opined, without further explanation, that it was medically necessary that Chmura not receive an influenza vaccine "due to a hypersensitivity to a component in the . . . vaccine," did not specify the component of the influenza vaccine to which Chmura was hypersensitive, nor did it reference any documented allergy testing or other medical records to support her opinion (Dkt. No. 26-14). Consequently, after receipt of the letter, Mon General, via Dr.

Hawthorne, contacted Dr. Guana to discuss her medical opinions. During that conversation, Dr. Guana admitted that she had not performed any allergy testing before completing Chmura's 2016 Medical Exemption Form and writing the letter in support of her exemption request (Dkt. No. 26-15 at 2).

During her deposition, Chmura confirmed that she never provided any documents regarding allergy testing to Mon General at the time she submitted her 2016 exemption request, because Dr. Guana had never performed any type of medical testing to determine whether she was, in fact, hypersensitive to any particular component(s) of the vaccine (Dkt. Nos. 26-1 at 26, 31, 34). Chmura therefore agreed that, as of the writing of Dr. Guana's letter in November 2016, she "**didn't have <u>any</u> medical evidence** from Dr. Guana or anyone else **that [she] had a hypersensitivity to any . . . component of the vaccine <u>other than</u> latex**." <u>Id.</u> at 31 (emphasis).

Finally, and most tellingly, Chmura also agreed that, because Dr. Guana had not performed any medical testing, "**Mon General [wa]s not aware of any allergy** to any component of the flu shot" other than latex, when it denied her 2016 exemption request. <u>Id.</u> at 34-35; <u>see also</u> <u>id.</u> at 26 (Chmura agreeing that, because she never obtained medical testing to determine the component of the Afluria vaccine to which she had allegedly reacted in November 2015, Mon

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25] AND DISMISSING CASE WITH PREJUDICE**

General could not have known what caused the alleged reaction when it considered her 2016 medical exemption request).[5]

Nonetheless, Chmura argues that a genuine dispute of material fact exists "regarding Dr. Guana's assessment of the true nature of her disability" (Dkt. No. 27 at 11). She contends that her 2016 Medical Exemption Form suggests that Dr. Guana "appears to have believed that [she] suffered from an allergic reaction to another element of the influenza vaccine." Id. As discussed earlier, it is Chmura who bears the burden to produce sufficient evidence from which the Court can reasonably infer discrimination. An inference "is not a suspicion or a guess." Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999).

The Court therefore will not endorse Chmura's speculation about what Dr. Guana "appears to have believed" about her reaction to the Afluria vaccine, particularly given the undisputed evidence that Dr. Guana could not have known which, if any, component of the vaccine had caused Chmura's reaction since she had performed no medical testing. Chmura's contention is also directly refuted by

---

[5] Chmura further testified that, as of the time of her deposition in February 2019, Dr. Guana still had not performed any allergy testing to determine whether Chmura has a hypersensitivity to a component of the influenza vaccine other than latex. Chmura stated that she had not yet obtained such testing "because I really haven't had the time." (Dkt. No. 26-1 at 1).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25] AND DISMISSING CASE WITH PREJUDICE**

Dr. Gauna's concession to Dr. Hawthorne that there was "no medical reason" Chmura could not have received a latex-free vaccine (Dkt. No. 26-15 at 2).

And so, while Chmura undoubtedly requested a medical exemption to the Flu Vaccination Policy in both 2015 and 2016, the record reflects that she never provided Mon General with sufficient documentation to establish a contraindication to some component of the influenza vaccination other than latex. Further, Mon General, which had been aware of Chmura's latex allergy since at least October of 2015, had taken no adverse employment action against her on the basis of her reported contraindication to latex. Rather, it acknowledged that Chmura could satisfy its Policy by receiving any one of the numerous latex-free influenza vaccinations available to her, and continued to employ her for more than a year. Accordingly, the undisputed evidence before the Court establishes that Chmura's termination, far from any unlawful disability discrimination by Mon General, was the result of her own continued failure to comply with the Flu Vaccination Policy in November 2016. Chmura failed either to obtain a latex-free influenza vaccination or to provide documentation sufficient to obtain a medical exemption based on a recognized contraindication to the vaccine other than latex.

Thus, when the evidence is viewed in the light most favorable

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25] AND DISMISSING CASE WITH PREJUDICE**

to Chmura, as it must be, the Court concludes that she has failed to offer sufficient evidence of a reasonable inference of unlawful discrimination so as to withstand summary judgment. Having failed to demonstrate a reasonable inference of discrimination, Chmura has failed to establish a <u>prima</u> <u>facie</u> case of wrongful discharge under the ADA.

## C.   Burden-Shifting Analysis

Given Chmura's failure to establish a <u>prima</u> <u>facie</u> case, it is not necessary to undertake the burden-shifting analysis under the second step of <u>McDonnell Douglas</u>. Nonetheless, even had Chmura made out a <u>prima</u> <u>facie</u> case, Mon Health has demonstrated a non-discriminatory reason for terminating her employment. The stated purpose of Mon Health's Flu Vaccination Policy was "to provide information . . . regarding the requirements for all . . . employees . . . providing services on any [Mon Health] premises to be immunized against influenza" (Dkt. No. 26-2 at 1). In her deposition, Chmura agreed that the Policy was designed to protect the safety of hospital patients and staff by reducing the risk of influenza infection and spread (Dkt. No. 26-1 at 11-12). As discussed at length, Chmura did not obtain an influenza vaccine in November 2016 and, thus, failed to comply with the Policy. Mon Health has therefore satisfied its relatively modest burden to

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25] AND DISMISSING CASE WITH PREJUDICE**

produce evidence of a legitimate, non-discriminatory reason for terminating Chmura.

Moreover, for many of the same reasons that Chmura has failed to demonstrate a reasonable inference of unlawful discrimination, she also has failed to demonstrate that the legitimate reason for her termination offered by Mon Health is a pretext for disability discrimination. The only specific evidence Chmura cites for that proposition is an unsupported assertion that Mon Health has exempted at least one other employee from the Policy's vaccination requirement, "despite [the employee] not falling under any of Defendant's noted exceptions" (Dkt. No. 27 at 14). Chmura has produced no evidence in support of this assertion. See id. (citing to transcript pages not included in the record on summary judgment). Therefore, even when drawing all reasonable inferences in her favor, the Court concludes that Chmura has failed to demonstrate, by a preponderance of the evidence, that Mon Health's justification for her termination was pretextual.

## IV. CONCLUSION

For the reasons discussed, the Court **GRANTS** Mon Health's motion for summary judgment (Dkt. No. 25), and **DISMISSES** this case **WITH PREJUDICE.**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 25] AND DISMISSING CASE WITH PREJUDICE**

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and to enter a separate judgment order.

DATED: August 9, 2019

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE